UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

CIVIL ACTION NO. 05-84-DLB

JACK HOLCOMB                                                                     PLAINTIFF

VS.                              **MEMORANDUM ORDER**

JOHN WOMACK, ET AL.                                                         DEFENDANTS

********************************

This diversity case is presently before the Court upon Defendant JMK Electric Company's Motion to Dismiss. (Doc. #9). Plaintiff filed a response (Doc. #11), and the time for filing a reply having expired, the motion is now ripe for review.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

At its core, this case involves a dispute over a construction contract. On June 1, 2002, Plaintiff and Defendant John Womack, individually and on behalf of Womack Construction Company and Womack Development (collectively referred to as the "Womack Defendants"), entered into an oral agreement (the "Construction Contact"), whereby Womack agreed to perform certain construction and other work at Plaintiff's Louisa, Kentucky property.[1] Under the terms of the Construction Contract, Plaintiff agreed to compensate Womack, as general contractor, for costs (i.e., labor and material), plus 16.5%. Womack subsequently delegated certain of its contractual duties to several subcontractors. Womack enlisted JMK Electric, specifically, to perform the electrical work

---

[1] Plaintiff's property is known as the "Sunset Ranch."

1

on the Sunset Ranch project.

After a dispute regarding Womack's billing practices arose, the parties reduced their original agreement, with the benefit of additional terms, to a writing. This subsequent agreement was executed on November 4, 2003. From that date until July 2004, work on the Sunset Ranch continued without incident. However, for reasons currently unknown to the Court, Plaintiff terminated the contract in July 2004. At the time of the termination, Plaintiff alleges that: 1) several projects were left incomplete, and 2) completed projects were otherwise damaged, non-conforming, or improperly constructed. Plaintiff also alleges that he discovered additional evidence of billing improprieties by Womack. Specifically, he claims that he was billed for: 1) equipment that was never used, or was used for other projects, 2) excessive materials, and 3) unnecessary work. Plaintiff further alleges that Womack: 1) deviated from the project's specifications, 2) performed the work using the most expensive means/techniques possible, 3) failed to engage in competitive bidding or otherwise attempt to control costs, 4) billed for items that were non-compensable under the terms of the contract, and 5) billed for items/materials that were never used.

Plaintiff filed the instant suit on May 27, 2005. Plaintiff's complaint charges the Womack Defendants with breach of contract, breach of their implied duties of good faith and fair dealing, conversion, fraud, negligence, negligent supervision and management, and violations of Kentucky's Consumer Protection Act. *See* K.R.S. § 367.110 *et seq*. In Count II of the Complaint, Plaintiff also brought claims against several subcontractors that performed work on the Sunset Ranch for breach of contract, arguing that he was "the intended third-party beneficiary of the contractual arrangements between [them] and [the Womack Defendants] ...."

2

On June 20, 2005, JMK Electric moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that based upon the lack of privity with Plaintiff, any contractual claims against it must fail. Plaintiff filed a brief reply, simply re-asserting his original claim that he was an intended third-party beneficiary of the subcontract between Womack and JMK Electric and thus, the breach of contract claim is viable. On October 4, 2005, the Court heard oral argument on the motion. For the reasons that follow, the Court concludes that the Motion to Dismiss is well taken and will be granted.

## II. ANALYSIS

In support of its motion, JMK Electric argues that Plaintiff's breach of contract claim must fail because "there is no reference to any construction agreement [between the parties]." On the face of Plaintiff's complaint, the only agreement appears to be the oral (and subsequent written) agreement between Plaintiff and Womack. Plaintiff acknowledges as much, but claims that he was an intended third-party beneficiary of the subcontract between Womack and JMK Electric. According to Plaintiff, the subcontract between Womack and JMK Electric was executed for the purpose of performing the work contemplated under Womack's Construction Contract with him. Finally, Plaintiff claims that, "At all times, JMK was aware that the work it was performing was for [his] benefit ... and in fulfillment of Womack's obligations to [him]."

Although the parties have failed to cite to any controlling Kentucky case law, several courts have been unwilling to permit property owners, such as Plaintiff, to recover against subcontractors for breach of contract under a third-party beneficiary theory. *See Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 2004 WL 557339, at *5-6 (Ohio Ct. App. Mar.

23, 2004); *Brewer v. H&R Concrete*, 1999 WL 49366 (Ohio Ct. App. Feb 5, 1999) (property owners were not intended third-party beneficiaries simply because the subcontractor knew that the house was being built for them); *Publix Super Markets v. Cheesbro Roofing*, 502 So.2d 484 (Fla. Distr. Ct. App. 5th Distr. 1987) (property owner is not generally the intended third-party beneficiary of a contract between a general contractor and subcontractor - although the work performed by subcontractors ultimately accrues to the property owner, the owner is ordinarily regarded as only an incidental beneficiary of the subcontract); *East v. Galebridge Custom Builders*, 839 S.W.2d 720, 722 (Miss. Ct. App. ED, Div. Three 1992) (affirming dismissal of complaints against subcontractors brought by property owners for breach of contract). These courts have opined that, absent clear language indicating an intent to benefit, the performance of a contract between a general contractor and subcontractor confers only incidental benefits upon a property owner. Accordingly, an owner's only recourse for breach of contract is generally against the party with which it enjoys privity - the general contractor.

The then-highest court in Kentucky examined the relationship between a subcontractor and property owner in *Commonwealth Dept. of Highways v. L.G. Wasson Coal Mining Corp.*, 358 S.W.2d 347 (Ky. 1962). Although the parties in that case were aligned on different sides than Plaintiff and JMK Electric (i.e., the subcontractor brought suit against the general contractor and property owner, which was a governmental unit, based upon alleged contractual liabilities), the court's reasoning is nevertheless instructive. In *Wasson*, the Department of Highways contracted with Traylor Brothers, Inc. to perform the grade and drain work on a 12-mile section of a highway construction project. *Id.* at

4

348. Traylor subsequently subcontracted a 4-mile section to Wasson, for which Wasson received 34.5 cents per cubic yard for burrow pit excavation. *Id.* Wasson brought suit against the Department of Highways claiming that it had underestimated the amount of burrow pit excavation that was required, and for which it compensated Traylor. *Id.* The only information provided by way of Wasson's complaint was that a contract existed between the department and Traylor, and that a subcontract existed between Traylor and Wasson. *Id.*

The department defended the suit on the basis that it had no contractual relationship with Wasson and, therefore, any contract-based liability was precluded. *Id.* The trial court, however, sustained the cause of action on a third-party beneficiary theory. *Wasson*, 358 S.W.2d at 348. The court of appeals disagreed, finding that the contract between the department and Traylor did not intend to benefit Wasson, nor did it create any obligation on behalf of the department in favor of Wasson. *Id.*

Plaintiff has not put forth any evidence - either in his initial pleading, or response to JMK's motion to dismiss, or during oral argument, that, under the terms of the subcontract between Womack and JMK Electric, he was an intended third-beneficiary.[2] In the absence of such evidence, and based upon the foregoing persuasive authority, the Court finds Plaintiff's contention unavailing. Therefore, the Court concludes that Plaintiff was not a party to the contract between Womack and JMK Electric, nor is he an intended third-party

---

[2] JMK also notes that, at the time of the November 4, 2003 agreement between Plaintiff and Womack, Workman & Sons Plumbing was the only subcontractor that contracted with Womack and was still working on the Holcomb project. From that date forward, Plaintiff and Womack agreed that all other subcontractors would be hired by Plaintiff directly.

5

beneficiary of the same. As a matter of law, Plaintiff's claims of breach of contract (contained in Count II of the complaint) must fail.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant JMK Electric Company's motion to dismiss (Doc. #9) be, and hereby is, **GRANTED**.

This 4th day of October, 2005.



Signed By:
David L. Bunning
United States District Judge

\\156.125.121.192\bunning\DATA\Opinions\0-05-84-MTD.wpd

6